Morning, ladies and gentlemen. We have three cases on the calendar this morning. Two patent cases, one from the district court, one from the patent office. We have an employee case from the Merit Systems Protection Board that has been submitted on the briefs and will therefore not be argued. The first case is Dygene Corporation v. Third Wave Technologies, 2008, 1242 and 43. Mr. West. Thank you. May it please the court, the summary judgment of non-infringement here should be vacated because it rests on the court's constructions are at odds with the intrinsic evidence. Individually and collectively, they have the effect of converting open-ended claims, which include the transition term comprising to closed-end claims. So that if an infringer simply adds another element, a little more DNA, a few mismatches to its product, that would avoid infringement even if the product otherwise fully meets the three key characteristics that define HPV-52 DNA. In addition, the district court drew unwarranted inferences from the specification examples contrary to this court's law and imposed additional burdens on Dygene that have no place in claim construction. Mr. West, you mentioned the comprising, but isn't there also a consisting in these claims? There is an embedded consisting of your honor, yes, and I intend to get to that point, but if you have a question now, I'll be happy to answer. Consisting is limiting. Consisting is limiting, but the question is what does it limit? That's the question. If you'd like for me to address that right now, I'll get to it. That was your first point. Then let's get to it. The terms are HPV DNA and quote consists of all or a fragment of an HPV DNA. First, the general rule is an means one or more. Recently in the Baldwin graphics case, this court reinforced the presumption that it means one or more and said that the exceptions are very rare, which would take an out of one or more. Where we have a consists, doesn't that follow HPV-52, which is rather specific? No, it follows HP. It follows it in a general way, but it really follows. It's the consists of is all or a fragment of an HPV DNA and without question consists of limits that clause to either all or a fragment of an HPV DNA, but there is no suggestion in the decisions of this court that consists of changes the meaning of and in the circumstances here where the base claim is comprising and there is nothing in the patent at all, nothing in the specification or prosecution history that evinces an intention to limit it to less than one or more. These claims are... I was just going to say, one of my difficulties here is I don't have a... coming up on summary judgments, you don't give us the whole context. I don't have a good idea of what third waves invader ASR is doing. I guess it's detecting or hybridizing to many strains, not just 52. Well, I don't believe that's entirely correct. It may be correct with respect to some of their products, but not all of them, but the accused product... What I'm doing is I'm criticizing both of you for not telling us what the accused is precisely so we can tell what we're dealing with. We understand that dilemma, but I believe there is enough here that you can... Well, tell me what's your theory for infringement? The theory for infringement is, first of all, they don't deny that they're using HPV DNA, which otherwise meets the properties specified in the claims. They're not denying they're using that. They're not denying that they're using it to detect HPV 52 DNA and or other types of... But their ASR does a lot more, right? Some of them do, but we have evidence that, and this was in Exhibit 11 to the Olson deposition. The parts of the deposition are before you. I don't believe Exhibit 11 is, but we can submit that if it would be helpful. But in Exhibit 11, it shows that one accused product is a string of HPV 52 DNA with a couple of mismatches, two mismatches, which do not affect the hybridization properties, but allow Third Wave to argue that it's not only HPV 52 DNA. And attached to that, they have a detectable label. And they admit in their brief that the flap is something that separates from the probe, from the invader probe, and ultimately detects the presence of the hybridization with a target. Well, let me ask you, as I understand Third Wave, their view is that if any of the disputed constructions is affirmed here, there is non-infringement under the stipulation. Is that correct? They have said that that's not entirely correct because the example that I just referred to, one of the accused products is 41 nucleotides in length. So it's way longer than 15. So for that reason, the approximately 15 issue here is not at all determinative of infringement. Regardless of how you go on that, we still have infringement. You mean even if we were to affirm the district court's construction of HPV 52 DNA and the consist language, you say there'd still be infringement even under those conditions? I think that's the reason why non-infringement was conceded because the problem here is- Could you just sort of direct my- Sure. If we were to affirm- If you were to affirm, I think they would avoid infringement. If it has to be only something that is purely HPV 52 DNA. But our position is you can meet the claims with a string of HPV 52 DNA, but if you just attach a couple of extra nucleotides at the end, which are quote other DNA, that's not outside the claims and that doesn't avoid infringement. It's the typical rule of if an infringer has what is claimed A, B, and C, but adds D, that doesn't avoid infringement. And that's the situation we have here. Did I answer your question, gentlemen? You need to address the prosecution history that seems to limit you to only HPV 52 DNA, right? Well, in my view, there is no prosecution history that does that, Judge Rader. The references to derive from do not mean only. The references to specific for do not mean only. In fact, if you look at page 32 of our blue brief, we cited the prosecution history where the applicant explained exactly what was meant by specific for. He said it's specific for HPV 52. That is, the claimed HPV 52 DNA will not hybridize to the other HPV types, that's 1 to 51, under stringent conditions. So that's what it meant by specific for. The prosecution history never says, never intimates that the claimed HPV DNA has to be, quote, pure. It can include other nucleotides. That's why the test under moderately stringent conditions for HPV 52D, that's the second property in the claim. Claim 8 reads on essentially pure, which seems to me to be a very strange claim, where the length of the HPV 52 is between 15 and 8,000 bases. How can it be essentially pure? Essentially pure 52 must have presumably a specific number of bases. So 15, 8,000 doesn't sound essentially pure. I don't want to argue that point right now. But what I will say is I didn't write them, and the other claims don't say essentially pure. But the- Isn't the answer, it's a non-answer to Judge Rader's comment, which supports his question, Appendix 1075 in the prosecution that says the claimed HPV 52 must be derived from only type 52. Right. That's how it was obtained. But the specification and the prosecution history go on to point out how you can synthesize. Once you've derived it, you can synthesize it. And when you can synthesize it, an infringer can add a few elements of other nucleotides that are mismatches, but do not prevent that product from hybridizing with the clone PCD15 under moderately stringent conditions, which is the test that everybody in the art uses to determine whether two HPV DNAs are of the same type. And the- But the specification nor the prosecution history ever says that the claimed thing cannot include other nucleotides if it meets the conditions specified in the claim. So if it meets the conditions specified in the claim, it is HPV 52 DNA. That's the test that everybody skilled in the art follows. Do you want to save your rebuttal or would you like to use it? I'll save it. Thank you very much. Mr. Pals. You may have pleased the court. The district court carefully looked at the claims of the intrinsic evidence and construed the claim terms correctly with respect to all of the evidence before it. What the named inventor purportedly did was identify the DNA of a particular type of HPV virus, HPV type 52. 52. And only 52. In fact, not even all 52s, only this particular one, because even within 52 there's some variation. The deposited clone PCD15- Is the variation as wide as 15 to 8,000? No, the variation, the 15 to 8,000 comes from cutting up the HPV 52 DNA. But the patent is clear that those fragments come from HPV 52 DNA, which is a thing. It is not a function. It is not a property. It is a thing. How about the idea that the accused can have that plus other DNAs and still be infringing? It's not HPV 52 DNA anymore, Your Honor. Once you add DNA sequence to a DNA sequence, you no longer have that DNA anymore. It's no longer- What if it performs the same function? DNA is not a functionality. It's a molecule. It's like adding glucose and fructose together. You don't have glucose anymore. You have sucrose. You don't have it anymore. What if it performs the same function? If it performs the same function, then maybe they could try to create some doctrine of equivalence argument, but I think they've got serious prosecution history problems with that. But it's not the same molecule, which they claimed the molecule. So they didn't claim a function. They claimed things. This is a composition of matter claim. They claimed probes. They claimed HPV 52 DNA that comes from HPV DNA, which they've admitted is a full-length genome. They admitted that to the district court below. They said, if you say it's a full-length genome, we can live with that. They've agreed to that. So then the question becomes, can you have something that's part of or that is more than one full-length genome? Are we limited to one full-length genome? What about the detectable label, which trial court held cannot include the DNA? Yes, Your Honor. And it can't. If you look at the specification. The claim doesn't say that. The spec doesn't say that. The specification talks about different labels that can be used. And all of those, as we argued to the district court, actually are something that bring a new property, a new detectable property to the DNA that's being labeled. So you're supposed to label with a detectable label. If DNA could be a detectable label, then you'd always have a detectable label whenever you had a DNA molecule. It would inherently be labeled with a detectable label by the nature of what it is. It's not something new that's added of the nature that's recited in the spec. Correct, correct. In addition, in the prosecution of the patents, there was some discussion with respect to the comprising limitation. The comprising limitation appears in Claims 18, 21, 24, and 26. Those are the independent claims. 24 and 26 are method claims. Those are controlled by Moleculon. You can't open up a method claim under the Moleculon case law to change the steps that have to be performed. So that disposes of 24 and 26. Eight, the essentially pure claim, doesn't have comprising in it. 18 and 21 do. But the comprising term, again, can't be used, just like the detectable label term, to change what's being claimed. Because if DNA is added to HPV-52 DNA, you no longer have HPV-52 DNA. And they actually, in prosecuting the patent, they prosecuted and obtained... Well, what if the accused had HPV-52 plus HPV-51? Would that not still be infringed? Your Honor, first, I disagree with Mr. West's comments. We don't have HPV DNA in our products, in our DNA molecules that we use. You don't have HPV at all, 52 or otherwise? We don't have naturally occurring sequence. You synthesize it. We synthesize it, but we also synthesize it, and it is different than the DNA in HPV-52 or the DNA in other HPV types. And, in fact, the probes are designed to hybridize with more than one HPV type. Does it hybridize with 52? It will under some conditions. Some of them will under some conditions. Under the conditions in this patent? Then why don't you infringe? Because it is not HPV DNA. It is not HPV-52 DNA.  This defines HPV-52 by the way that it hybridizes. If, as you just conceded, you hybridize to it, you fit the definition of the claim and you infringe. No, Your Honor. First, I disagree that, as I've said, that HPV-52 DNA is defined by its hybridization. It's defined by what it is, which is the DNA from HPV-52. In addition, there's a lot more to these claims than does it hybridize to 52 or not. Well, it's a strange definition. It's defined as HPV-52, and one of them says essentially pure. Then it has these other qualifications between 50 and 8,000, cross-hybridized greater than 50 percent, but does not cross-hybridize with 1 to 51. So, very strange. It's not just H52 as a definition, but it's all these other criteria. But they all have to be considered, don't they? Yes, they do. All the limitations would have to be met from each of the characteristics, and we show it in our opening brief from pages 13 to 18. We have some pictures that show how the claim limitations operate to select out the pieces of DNA that are the claimed HPV-52 DNA, but it has to meet every single one of those. And what they're doing is, through those limitations, is they're selecting out particular fragments of HPV-52 DNA that don't hybridize to 1 to 51 and have these other properties. So they're trying to identify something that's particular or specific to HPV-52 DNA and its hybridization. It turns out, as we explained, that comes up a little short, because in selecting that out, they may actually identify something that doesn't even hybridize to 52, which is why the preamble in Claim 18 is important for construction and understanding of that claim. But the point is, so I disagree with Mr. West's characterization of our products and what they contain or don't contain. In fact, under any construction, I don't see how they can prove infringement of these claims. But the key terms, I think you sort of hit on them, the panelists hit on them, the terms that sort of transcend all the claims, because some appear in some claims and some don't, are HPV DNA and HPV-52 DNA. Of course, we're not reviewing any infringement finding. We're reviewing a claim construction, and under the district court's claim construction, it was conceded there'd be no infringement. Yes, that's correct, Your Honor. And I think Mr. West indicated that if HPV-52 DNA was upheld, they're still in the position that we don't infringe any of the asserted claims. So I think, to some extent, those are the key terms. So what's happened here is they've taken this discovery of the 52nd type of HPV, and now they're trying to say we claim not only the DNA from HPV-52, but we claim other DNAs that have any little bit of 52 in them, despite the fact that there's not a word in the patent. In other words, your view is that the fragments limitation in the claim gets you away from 52 per se and gets you into another HPV, which may have only a small fragment of 52? They may have issues if they try to assert it that way, and there are fragments of 52 that are found in other HPVs, and that's part of why they have don't hybridize to 1 to 51, because the examiner realized this as well, and they tried to exclude some of those other fragments that would have been known before, the 1 to 51s, but the way they're trying to read the claims, if there's a human piece of DNA or a rabbit piece of DNA that has 15 bases that are in 52, it would anticipate. They don't describe these hybrid molecules or these mixed molecules. They don't describe what they say we're trying to exclude random DNA, whatever that is, and that we're trying to exclude synthesized DNA. That's not correct. The claim constructions allow you to make the DNA, but its sequence has to match the sequence in 52. If you make something that doesn't match what's in 52, then it's not a fragment of 52. It's something different, and they've said that in prosecuting. They got claim 20 to issue, which is dependent on 18, and claim 20 of those 715 patents specifies where in the HPV DNA is the HPV portion of clone PCD15. We'll stop at DNA because the RNA component we haven't been getting into. So what they're saying... Clone is a plasmid? I don't know that, Your Honor. Is that what the P stands for? PCD15 is a plasmid, so it has in it a cloning vector as well as the actual sequence that they pulled out of the lesion that they biopsied. So what they're saying is if you cut out the HPV portion of PCD15 and use that as the HPV DNA in claim 18, that's what we're talking about in claim 20. Then what they did is they told the patent office. The patent office had looked at this fragments issue, and they said, holy cow, where's all this DNA described in the patent? That didn't include one. There was an issue. It could be as short as one, and it can't possibly be one, and some of the length discussion came in. But the issue remained with respect to what about these fragments and where's this DNA coming from? The same portion, the same office action response that the panel raised before, which was I think you cited A1075. At A1077, Digeen is arguing this written description issue, and they're pointing to application claim 47, which issued as patent claim 20. They said, don't worry about this written description. It's taken care of. What they say is, applicant notes in particular that new claims 44 to 51 are specifically limited to nucleotide molecules from the HPV type 52 clone, PCD15, derived by applicant, described in the specification, and deposited under the terms of the Budapest Treaty. Thus, there can be no question that the nucleotide molecules of these claims are adequately described. In other words, all of the DNA that's covered by claim 20, every component of the DNA that's covered by 20, is in the HPV portion of PCD15. There isn't any other DNA. You can't add DNA to this, and we, Digeen, or we, applicant, arguing to the patent office, isn't saying we can add it in through comprising or we can add it in through detectable label. They're saying that all the DNA within the scope of this claim is found in the HPV portion, which is HPV52. So they've said to the public and the patent office that these arguments they're raising now, that you can plug other DNA onto this, are correct. It's in the PCD15. It's in the HPV52. So we've got the HPV DNA, the full-length genome of one HPV. You can't have a full-length genome of two HPVs. You can't have fragments of two HPVs. That doesn't make sense. And then the HPV52 DNA. Why is that? Because if you look at just the claim line, well, there are two reasons. One is just logically, while there could be... Why can't you have two full lengths? Because they'd be different. They'd, by definition, be different, in which case you wouldn't have the same thing. But they also then put consists of in front of that, and as the panel noted, that closes that clause down. It doesn't close it down to all or a fragment. It closes it down to all of an HPV DNA or a fragment of an HPV DNA. It closes the whole thing down. It doesn't close down all of a fragment, which actually isn't even closed because that allows for anything. So the consists of language closes it down. The an HPV DNA read, logically, according to the claim language, limits it to one full-length genome. HPV DNA is limited to DNA only from HPV type 52, and they can't open these claims up by looking at comprising or looking at detectable label, in part because they told the Patent Office and the public that's not included. Thank you, Mr. Pales. Mr. West has some rebuttal time. Taking last things first, I was listening to Mr. Powell's explanation, and he didn't really give you any reason why consisting of limits the meaning of an HPV DNA. Certainly consists of closes it to either all or a fragment of an HPV DNA, but he didn't give you any reason, and there's no precedent in this court, that says that consisting of changes the meaning of an, absent other evidence in the patent. In the Norian case, there was plenty of other evidence in the patent that the court relied on. But even in Norian, this court did not say that consists of creates any rule that changes the meaning of an in a clause like this. Now, I'm going to ask the court's indulgence for a moment. We have the Olson deposition portions in the record, and there's an exhibit to the Olson deposition, and I'm not sure whether this is in the record or not. And I want to preface this, so if you don't want to see this, you don't have to, but I think it will help you understand the question, the answers to questions you've been asking. May I use it? Mr. Powell, are you aware of it, and do you agree? Mr. Powell, I'm sure has seen this before. I have seen this, Your Honor. I mean, we did not, parties did not put in detailed evidence on probe composition or hybridization characteristics. In other words, you don't have an opportunity to respond to his argument. Correct. And you accept that. Are you objecting to this? I'm objecting because we haven't had an opportunity to. All right. But I just want to say that we, I disagree with what Mr. Powell said. I think their position is, if you have a string of HPV DNA, and you synthesize it, and you put in a couple of mismatches, which make it something a little bit different, but it's still HPV 52 because it hybridizes as the claims require, or doesn't hybridize to 151. By the way, Judge Wood, non-hybridization to 151 simply means that that's proof that it's not prior art. That's all that means. But the hybridization. It's not prior art, but it also doesn't infringe. Well, if it is one to 51, if it's to detect a target and it's one to 51, then right. It's not going to meet the claim and it's not going to infringe. But if it does hybridize to the clone, PCD 15, then it is type 52. If it doesn't cross hybridize to one to 51, then you know it's not prior art and it is type 52. These days with all sorts of sequencing machines, isn't it known what the 52 are? In determining infringement, doesn't one determine whether those are the 52 or if this is an early patent? Here's the point, Judge Lurie. HPV 52 DNA is not one single sequence. How many substitutable amino acids are there? There are types 52A, 52B, 52C. They all vary in some little ways. Within those types, there will be substitutable amino acids all along the chain, won't there? Correct. Leaving you how many potential 52s? Correct. You could have dozens. We know of some. That's the whole point here. The district judge thought that HPV 52 DNA was one single thing and it's not. Because all of these subtypes will cross hybridize to the clone, showing that they are type 52 and not something else. That's the point. Thank you. I've got a couple of minutes. I want to talk about detectable label. You don't have a couple of minutes, but make the final point. Okay. Detectable label. The district court drew unwarranted inferences from the long list of non-exclusive examples. She said, well, I don't see anything in there that says that non-radioactive DNA can be used. Well, it does say radioactive DNA can be used, and it doesn't say that non-radioactive DNA can be used. The point of this is that DNA is a ligand. It can bind to other materials just like biotin, and it can function as a detectable label if you want it to. Whether something is or is not a detectable label depends on the use you make of it. The patent tells you how you can use various things to be detectable labels. So there is no basis for excluding DNA from even non-radioactive DNA from the scope of detectable label. Thank you very much. Thank you, Mr. West. The case will be taken under advisement.